UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICOLE LAWTONE-BOWLES,

                                        Plaintiff,


        - against -                                              No. 14-CV-606 (CS)

                                                              **OPINION & ORDER**


TROOPER DAVID J. KATZ,

                                        Defendant.

---

<u>Appearances</u>:

Nicole Lawtone-Bowles
Highland Falls, New York
*Plaintiff Pro Se*

Christina Okereke
Office of the New York State Attorney General
New York, New York
*Counsel for Defendant Trooper David J. Katz*

<u>Seibel, J.</u>

        Before the Court is Defendant's Motion for Summary Judgment.  (Doc. 48).  For the

reasons stated below, Defendant's motion is GRANTED.

**I.      Background**

        A.  Facts

        The following facts, which are based on Defendant's Local Rule 56.1 statement,

supporting materials and the record in this case, are undisputed except where noted.[1]

---

[1] Despite being informed of her obligation to do so, (*see* Doc. 54), Plaintiff did not file a statement pursuant to Local Civil Rule 56.1 (a "56.1 statement") or a response to Defendant's 56.1 statement.  Instead, her opposition consisted

Defendant Trooper David J. Katz is employed by the New York State Police.  (D's 56.1 Stmt. ¶ 2.)[2]  His duties include patrolling roadways and enforcing state vehicle and traffic laws.  (*Id.* ¶ 3.)  On January 16, 2014, Defendant was on duty and driving a marked police vehicle in the village of South Nyack, New York.  (*Id.* ¶ 4.)  At approximately 10:45 a.m., Defendant observed a vehicle – which he later learned was driven by Plaintiff Nicole Lawtone-Bowles – speeding down the highway at an estimated rate of 87 miles per hour (exceeding the speed limit by approximately 30 miles per hour).  (*Id.* ¶¶ 5, 7-8.)  Plaintiff disputes this account and testified at her deposition that she was driving on cruise control within the speed limit at 54 or 55 miles per hour.  (Lawtone-Bowles Dep. 33, 51.)[3]  Defendant states that he further observed the vehicle tailing other cars too closely and repeatedly changing lanes without signaling, and also noted that

---

of a brief affirmation and a handful of appended exhibits.  (*See* Affirmation of Nicole Lawtone-Bowles in Opposition to Motion ("P's Opp."), (Doc. 45).)  (Certain pages of Plaintiff's affirmation that were cut off in that docket entry are available in the copy Defendant provided on reply.  *See* Reply Declaration of Christina Okereke ("Okereke Reply Decl."), (Doc. 58), Ex. B.)  Defendant submits that therefore the Court should consider as undisputed the facts asserted in his 56.1 statement.  (*See* Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment ("D's Reply Mem."), (Doc. 57), 4.)  Where a nonmoving party fails to respond to a 56.1 statement, the court may "conclude that the facts asserted in the statement are uncontested and admissible."  *T.Y. v. N.Y.C. Dep't of Educ.,* 584 F.3d 412, 418 (2d Cir. 2009); *see* Fed. R. Civ. P. 56(e)(2); Local Civil Rule 56.1(c).  "*Pro se* litigants are not excused from this rule."  *Riddick v. Thomas,* No. 11–CV–2986, 2012 WL 919328, at *1 (S.D.N.Y. Mar. 15, 2012).  "In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." *T.Y.,* 584 F.3d at 418.  Given the "special solicitude" owed to *pro se* litigants, I will construe her papers liberally and interpret them "to raise the strongest arguments that they suggest."  *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (internal quotation marks and emphasis omitted); *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file" 56.1 statement) (internal quotation marks omitted), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009).  Furthermore, in evaluating Defendant's motion, I will examine the record to determine if any material issues of fact remain for trial.  *See Buckley v. Cty. of Suffolk*, No. 10–CV–1110, 2013 WL 122972, at *1 (E.D.N.Y. Jan. 9, 2013) (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004)); *see also Riddick,* 2012 WL 919328, at *3 ("Where . . . plaintiff has failed to submit any facts in opposition to defendant's motion for summary judgment, this Court 'must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.'") (quoting *Vt. Teddy Bear,* 373 F.3d at 244).

The Court will send Plaintiff copies of all unpublished decisions cited in this opinion.

[2] "D's 56.1 Stmt." refers to Defendant's Statement Pursuant to Local Civil Rule 56.1.  (Doc. 49.)

[3] "Lawtone Bowles Dep." refers to March 25, 2015 Deposition of Nicole Lawtone-Bowles.  (Declaration of Christina Okereke ("Okereke Decl."), (Doc. 53), Ex. A.)

the windows were excessively tinted in violation of state law.  (*Id.* ¶¶ 9-10.)  Defendant began

trying to pull over the car, first by activating the emergency lights atop his car and then by using

a loudspeaker, but Plaintiff did not comply.  (*Id.* ¶¶ 12-14.)  Eventually Plaintiff pulled over in

the far left lane, at which point Defendant approached the vehicle, advised Plaintiff that he had

stopped her for speeding and following other vehicles too closely, and issued her traffic tickets

for both violations.  (*Id.* ¶¶ 15-19; *see* Lawtone-Bowles Dep. 32, 36.)  Defendant disputes

Plaintiff's contention that he threatened to issue her additional tickets once she stated that she

was not speeding and began questioning the basis for her arrest.[4]  (*See* Lawtone-Bowles Dep.

36.)

　　　　After the traffic stop concluded, Defendant states that he observed Plaintiff drive away at

an exceedingly high speed, and as a result followed her so that he could pull her over for a

second time.  (Katz Decl. ¶ 12.)[5]  Plaintiff contested this account at her deposition, testifying that

Defendant pulled her over after a few minutes even though she drove away within the speed

limit.  (Lawtone-Bowles Dep. 50-51, 56.)  According to Defendant, he confirmed, using his radar

equipment, that she was driving at 78 miles per hour – again, above the 55 miles per hour speed

limit – and further observed her driving recklessly.  (D's 56.1 Stmt.  ¶¶ 25-27.)  After

approximately three-and-a-half miles, he caught up to Plaintiff and pulled her over with the

intention of arresting her for the misdemeanor offense of reckless driving.  (*Id.* ¶¶ 30-31; Katz

Decl. ¶ 14.)  He approached her vehicle and had to order her approximately three times to exit

before she complied.  (D's 56.1 Stmt. ¶¶ 32-34; Katz Decl. ¶ 14.)  Defendant maintains that he

---

[4] As the Court will discuss, Defendant stopped Plaintiff twice.  Her complaint suggests that Defendant threatened to issue her more tickets during the second encounter, (Doc. 2, at 3), but in her deposition she testified that he made such threats during both, (Lawtone-Bowles Dep. 36, 64, 71).  At Plaintiff's trial in the New York Court of Claims, she similarly stated that Defendant threatened her with additional tickets during both stops.  (Supplemental Declaration of Christina Okereke ("Okereke Supp. Decl."), (Doc. 56), Ex. D, at 47, 107, 109, 217).

[5] "Katz Decl." refers to Declaration of David J. Katz.  (Doc. 51).

"did not reach into [P]laintiff's car, unbuckle her seat belt, or grab and drag her from her car." (Katz Decl. ¶ 14.)  He further states that he "did not push or throw [P]laintiff against the back of her car" and that he handcuffed Plaintiff with her cooperation and without any physical resistance.  (*Id.* ¶¶ 15-16.)

Plaintiff describes the events differently.  She, too, testified that she did not comply with Defendant's order to exit the vehicle, (*see* Lawtone-Bowles Dep. 57-58, 64), but also stated that Defendant proceeded to open the car door, remove her seat belt, grab her arm and pull her out of the vehicle, (*see id.* at 61-64.)[6]  She did not recall whether Defendant dragged her toward the back of her car or whether she walked.  (*Id.* at 66.)  Plaintiff further testified that Defendant pushed her against the vehicle, in the process hitting her knee against the rear bumper of the vehicle, and placed her under arrest for reckless driving.  (*Id.*)  She stated that Defendant again threatened to issue her more tickets if she did not stop speaking.  (*Id.* at 71.)  Defendant brought Plaintiff to the police station and wrote her tickets for reckless driving, failing to keep right and moving between lanes in an unsafe manner.  (D's 56.1 Stmt. ¶ 42.)  The parties do not dispute that Defendant took custody of Plaintiff's personal items and removed certain valuables from her purse at the station in her presence.  (Katz Decl. ¶ 19; Lawtone-Bowles Dep. 74.)[7]

The next day Plaintiff went to the emergency room at a nearby hospital, where, according to medical records, she complained of pain in her wrist, elbow, arm and knee.  (D's 56.1 Stmt. ¶¶ 46-47; Lawtone-Bowles Dep. 83.)[8]  X-rays of her wrist indicated mild degeneration at the

---

[6] She testified at one point that Defendant grabbed her arm, (Lawtone-Bowles Dep. 62), but later declined to specify exactly where Defendant touched her, (*see id.* at 63).

[7] Plaintiff later pleaded guilty to parking on pavement, which resolved the traffic charges against her.  (D's 56.1 Stmt. ¶ 45; Lawtone-Bowles Dep. 80.)

[8] Plaintiff in her deposition indicated that she told the doctor she had injured her left knee and her right elbow, arm and wrist, (Lawtone-Bowles Dep. 83), but Defendants state that the medical records show she reported pain in her

joint at the base of the thumb, but no fractures; x-rays of her elbow did not indicate any recent injury; and x-rays of her knee indicated swelling caused by excess fluid and moderate degenerative changes.  (D's 56.1 Stmt. ¶¶ 56-59.)  Plaintiff's medical records indicate that she was discharged and was asked to follow up with her primary medical doctor.  (*Id.* ¶ 61.)  At that follow-up appointment on January 28, 2014, according to her medical records, her right wrist condition was resolved without further treatment; her right knee was diagnosed with chronic degenerative joint disease, although no treatment was prescribed; and her right elbow was diagnosed with lateral epicondylitis, or tennis elbow.  (*Id.* ¶¶ 62-64.)  The doctor prescribed her a tennis elbow band to wear on her forearm and an anti-inflammatory gel.  (*Id.* ¶ 66.)  Plaintiff was seen by a different doctor, Dr. Arup Bhadra, on February 11, 2014, and was diagnosed with right elbow pain and possible tennis elbow and prescribed a cortisone injection along with pain medication.  (*Id.* ¶¶ 69, 71.)  That doctor also noted she suffered from osteoarthritis in both knees.  (*Id.* ¶ 70.)  Plaintiff had a follow-up appointment with Dr. Bhadra on March 11, 2014, where he again diagnosed her with right elbow strain and prescribed physical therapy.  (*Id.* ¶ 72.)  Her medical records do not reflect any further treatment concerning injuries to her elbow, wrist or knee.  (*Id.* ¶ 73.)

    B.  <u>Procedural History</u>

    Plaintiff filed her complaint on January 27, 2014, (Doc. 2), alleging claims pursuant to 42 U.S.C. § 1983 for excessive force, false arrest and unlawful search under the Fourth Amendment, retaliation based on the exercise of her First Amendment right to free speech, and discrimination based on race in violation of the Equal Protection Clause of the Fourteenth

---

right knee and that doctors took an x-ray of only that knee, (Declaration of Dr. Jonathan L. Holder ("Holder Decl."), (Doc. 52), ¶¶ 9, 11).

Amendment.  On October 5, 2015, Defendant requested to move for summary judgment pursuant

to Federal Rule of Civil Procedure 56, (Doc. 38), and at the subsequent pre-motion conference I

advised Plaintiff that Defendant would serve her with a motion for summary judgment seeking to

terminate the case without a trial and that she would have the opportunity to oppose the motion

with legal arguments and factual evidence.

On February 22, 2016, Defendant requested a second pre-motion conference, arguing that

based on events that arose after he filed his motion, Plaintiff was now collaterally estopped from

bringing certain claims.  (Doc. 42.)  At the March 18, 2016 conference, I explained Defendant's

argument to Plaintiff and told her that she needed to do legal research and provide some reason

why she believed Defendant was incorrect.  I instructed Defendant to file a supplemental brief,

Plaintiff to oppose, and Defendant to submit reply papers responding to the opposition Plaintiff

had previously filed, (Doc. 45), and her supplemental opposition.  Defendant subsequently filed

his supplemental brief, (Doc. 55), but Plaintiff apparently chose to rely on her initial submission

and declined to file further opposition, (*see* Okereke Reply Decl. Ex. A).

## II.    <u>Legal Standards</u>

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be

counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  The movant

bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1).  Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

III.   **Discussion**

A.  False Arrest and Excessive Force Claims

Defendant argues that Plaintiff's false arrest and excessive force claims under 42 U.S.C. § 1983 are barred by the doctrine of collateral estoppel because they were litigated and decided against Plaintiff in a prior state court action, in which she had a full and fair opportunity to litigate those claims.  (D's Supp. Mem. 1.)[9]  Plaintiff filed a claim against the State of New York in the New York State Court of Claims on or about January 27, 2014, alleging that Defendant used excessive force in the course of making an arrest, causing injuries to her wrist, elbow and knee, and that he falsely issued her tickets for motor vehicle violations.  (Okereke Supp. Decl. Ex. A.)  The case proceeded to a bench trial before Judge Thomas H. Scuccimarra of the Court of Claims.  The trial took place over the course of three days, during which time Plaintiff testified and also "offered several documentary exhibits and what purported to be a contemporaneous audio and video recording of different phases of her encounters with [Defendant.]"  (*Id.* Ex. B, at 1.)

Following the trial, Judge Scuccimarra dismissed Plaintiff's excessive force and false arrest claims in their entirety, finding that she failed to establish by a preponderance of the evidence any basis for holding the state liable based on Defendant's actions.  (*Id.* at 19.)  With respect to the false arrest claim, the judge noted that a claimant must show by a preponderance of the evidence "(1) intentional confinement by the defendant, (2) of which the [claimant] was aware, (3) to which the [claimant] did not consent, and (4) which was not otherwise privileged." (*Id.* at 15-16) (alterations in original) (internal quotation marks omitted).  The judge further

---

[9] "D's Supp. Mem." refers to Supplemental Memorandum of Law in Support of Defendant's Motion for Summary Judgment.  (Doc. 55.)

stated that an arrest supported by probable cause is one that is "otherwise privileged." (*Id.* at 16.) After reviewing the evidence presented by both parties, the court credited Defendant's version of events, found that he had reasonable cause to believe that Plaintiff's conduct constituted reckless driving under state law, and therefore concluded Defendant had probable cause to detain and arrest Plaintiff. (*Id.* at 19.)  Turning to Plaintiff's excessive force claim, the judge noted that the use of force is evaluated under the Fourth Amendment's standard of objective reasonableness. (*Id.* at 16.)  As an initial matter, he found that it was not clear that Defendant touched Plaintiff (which Defendant maintained he never did), given that Plaintiff said she was pulled out of the car by her left arm but said her right arm was injured.  (*Id.* at 19.)  But the court further determined that even if Defendant did pull Plaintiff out of her vehicle by her arm, "the force used . . . was reasonable under the circumstances" because Defendant had asked her to step out of the car several times.  (*Id.*)  Accordingly, the court concluded that Defendant's conduct could not be characterized as wrongfully excessive.  (*Id.*)

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002).  Collateral estoppel applies when:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Id.* at 288-89 (internal quotation marks omitted).  "It is well-settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983." *Muhammad v. Reeves*, No. 08-CV-182, 2012 WL 5617113, at *4 (W.D.N.Y. Nov. 15, 2012) (citing *Allen v. McCurry,* 449 U.S. 90 (1980)).  Under New York law, "'[t]he party asserting

issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding.'" *Peterson v. City of N.Y.*, No. 11-CV-3141, 2012 WL 2148181, at *1 (S.D.N.Y. June 13, 2012) (quoting *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995)).

a) <u>Prongs 1 and 2 – Identical Issues Were Litigated and Decided</u>

In order for an issue to be identical, it "must have been material to the first action or proceeding and essential to the decision rendered therein . . .  and it must be the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair rights or interests established by the first." *Muhammad*, 2012 WL 5617113, at *4 (internal quotation marks omitted).  As Defendant notes, (D's Supp. Mem. 4), the claims for false arrest and excessive force that Plaintiff currently alleges against Defendant under 42 U.S.C. § 1983 are the same claims she brought before the Court of Claims.  All claims arose out of the same set of facts.  Furthermore, the standards that the judge used to evaluate both claims are the same that apply to Plaintiff's instant § 1983 claims.  Therefore it is evident that the Court of Claims "conclusively resolve[d] the same set of facts on which both claims exist. . . . These issues were decided by the Court of Claims and are dispositive of the action before us today." *Goodson v. Sedlack*, 212 F. Supp. 2d 255, 257 (S.D.N.Y. 2002) (internal quotation marks omitted); *see Flemming v. Moulton*, No. 13-CV-1324, 2016 WL 3753087, at *2 (N.D.N.Y. July 11, 2016) (collateral estoppel properly applied where "issue to be determined – whether Defendants subjected Plaintiff to excessive force – was actually and necessarily decided by the Court of Claims in Defendants' favor"); *Jaffe v. Fitzgerald*, No. 06-CV-317, 2009 WL 804740, at *6 (E.D.N.Y. Mar. 27, 2009) ("identical issues" requirement met where Court of

10

Claims decided "substantially the same specific legal or factual dispute . . . in the prior action"); *Cruz v. Root*, 932 F. Supp. 66, 68 (W.D.N.Y. 1996) ("identical issues" requirement met where Court of Claims action and federal action both arose from same incident and issues presented regarding alleged violation of plaintiff's constitutional rights were identical); *Wright v. Coughlin*, No. 85-CV-624, 1987 WL 19633 (S.D.N.Y. Nov. 5, 1987) (Court of Claims decision given collateral estoppel effect in subsequent federal action where state court conclusively resolved same set of facts on which both claims existed), *aff'd*, 868 F.2d 1268 (2d Cir. 1988).

Accordingly, I find that Defendant has met his burden in demonstrating that the identical issues were raised in the prior proceeding and that those issues were litigated and decided.

b) <u>Prong 3 – Full and Fair Opportunity to Litigate</u>

Plaintiff, on the other hand, has not met her burden of demonstrating that she did not have a full and fair opportunity to litigate her false arrest and excessive force claims. She has presented no facts or allegations in support of this contention, but in any event, the record suggests that she was afforded a full and fair opportunity to litigate her case. Whether the previous forum provided such an opportunity depends on factors including "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of the litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law, and the foreseeability of future litigation." *Goodson*, 212 F. Supp. 2d at 257-58 (internal quotation marks omitted). In this instance the forum was a court of record, and Plaintiff's two claims were central to the prior case. Indeed, the false arrest and excessive force claims were the only ones advanced before the Court of Claims. Plaintiff by all accounts litigated the claim vigorously: she testified fully on her own behalf, introduced documentary evidence, objected to questions asked of her on cross-

examination, and cross-examined all of the State's witnesses, including Defendant.  (*See* Defendant's Supp. Mem. 7-8; *see generally* Okereke Supp. Decl. Ex. D.)  Although Plaintiff proceeded *pro se*, the record reflects that Judge Scuccimarra intervened and sustained objections on Plaintiff's behalf throughout trial, and otherwise made efforts to "make [the trial] as easy as [he could] for [Plaintiff]" and "give [her] as much leeway" as possible.[10]  (Okereke Supp. Decl. Ex. D., at 477-78); *see Vaccaro v. Bank of Am., N.A.*, No. 13-CV-2484, 2016 WL 4926201, at *6 (S.D.N.Y. Sept. 15, 2016) (mere fact plaintiff proceeded *pro se* did not sufficiently establish denial of full and fair opportunity to be heard); *Harmon v. Matarazzo*, No. 95-CV-3975, 1997 WL 94233, at *2 (E.D.N.Y. Feb. 27, 1997) (*pro se* litigant afforded full and fair opportunity in prior administrative proceeding where he submitted documentary evidence, called witnesses and cross examined defendants' witnesses, and where litigant had incentive to fully litigate issues central to hearing), *aff'd*, 162 F.3d 1147 (2d Cir. 1998).  Further, here there are no differences in the applicable law, as the Court of Claims recognized, and the instant litigation between the parties – which was pending at the time of the state hearing – was foreseeable.

Finally, with respect to the availability of new evidence, Plaintiff argued at the March 18, 2016 conference that the Court of Claims did not have Dr. Jonathan Holder's report opining, after examining Plaintiff on August 10, 2015, that "the present complaints and the complaints sustained after the alleged injury of January 2014 appear to at worst be an aggravation of preexisting conditions."  (Holder Decl. Ex. A, at 3.)  Plaintiff did not have the report during the trial – during which evidence was taken on November 15, 2014, April 28, 2015 and May 19,

---

[10] As an example, Plaintiff sought to introduce at trial what she claimed was audio and video evidence of the car stops.  Defendant opposed and stated that the introduction of such evidence would be substantially prejudicial because Plaintiff had failed to comply with his prior requests for that evidence.  The court confirmed that Defendant had viewed the video at Plaintiff's deposition and was aware of its contents – minimizing any prejudice stemming from the introduction of the evidence at trial – and as a result permitted Plaintiff to show the video despite her failure to properly disclose.  (*See* Okereke Supp. Decl. Ex. D, at 18-23.)

2015, (*see* Okereke Supp. Decl. Ex. D) – given that Dr. Holder did not examine Plaintiff until August 10, 2015.  (Holder Decl. Ex. A.)  But Defendant produced the report to Plaintiff on September 14, 2015,[11] (Okereke Supp. Decl. Ex. C), well in advance of Judge Scuccimarra's decision on December 21, 2015, (*id.* Ex. B, at 20), suggesting that Plaintiff had over three months to present the report to the judge to supplement the evidence she introduced at trial. Accordingly, because Plaintiff had access to the evidence "during the pendency of the state court proceedings," *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 504 (N.Y. 1984), she is unable to show that the unavailability of the evidence at trial constitutes "a compelling showing of unfairness" indicative of the lack of a full and fair opportunity to litigate, *Charter Oak Fire Ins. Co.*, 882 F. Supp. 2d at 398; *see Toussie v. Cty. of Suffolk*, 806 F. Supp. 2d 558, 574 (E.D.N.Y. 2011) (party could not argue inability to fully litigate issue where pendency of Article 78 proceeding provided "forum to request and present" evidence).

Moreover, as Defendant notes, (D's Supp. Mem. 9), Dr. Holder's opinion regarding the extent of Plaintiff's injuries relates solely to the issue of whether she was injured.  The report would not have altered the judge's conclusions that (1) it was not clear whether Defendant made contact with Plaintiff at all, and (2) even if he did, any force used in pulling Plaintiff out of the car was reasonable under the circumstances.  As a result, Plaintiff has not presented a sufficient basis to believe that the Court of Claims would have reached a different outcome had it considered the results of Dr. Holder's examination.  *See Mancuso v. Vill. of Pelham*, No. 15-CV-

---

[11] There is no indication in the record – nor has Plaintiff suggested – that Defendant improperly withheld the report. *See Keitt v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 11-CV-0855, 2015 WL 2383687, at *11 (W.D.N.Y. May 19, 2015) (motion to dismiss denied on collateral estoppel grounds where plaintiff alleged defendants had possession of report but denied its existence and failed to produce it during prior litigation); *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 882 F. Supp. 2d 396, 398 (E.D.N.Y. 2012) (plaintiff deprived of full and fair opportunity to litigate claim where defendant did not produce "crucial evidence . . . responsive to plaintiff's discovery requests").

7895, 2016 WL 5660273, at \*17 (S.D.N.Y. Sept. 29, 2016) (evidence unavailable to party at time of Article 78 proceeding not "new" for purposes of nullifying doctrine of collateral estoppel where no indication it would have been dispositive regarding issue in question); *Charter Oak Fire Ins. Co.*, 882 F. Supp. 2d at 405 (plaintiff's claims not collaterally estopped due to "reasonable likelihood" that emergence of new "material evidence" could have changed verdict had it been available before judgment); *Kogut v. The Cty. of Nassau*, No. 06-CV-6695, 2009 WL 2413648, at \*9 (E.D.N.Y. Aug. 3, 2009) (whether party had full and fair opportunity to litigate issue depends on whether purportedly new evidence is "significant" such that it "would [have] almost certainly change[d] the earlier result"), *on reconsideration in part sub nom.* 2009 WL 5033937 (E.D.N.Y. Dec. 11, 2009).

Accordingly, Dr. Holder's report does not constitute "new evidence" nullifying the doctrine of collateral estoppel. Plaintiff has failed to meet her burden of showing that she did not have a full and fair opportunity to litigate her false arrest and excessive force claims.

c) <u>Prong 4 – Resolution of the Issue was Necessary to Support a Valid and Final Judgment on the Merits</u>

Finally, the state court's decision was "necessary to support a valid and final judgment on the merits." *Marvel Characters*, 310 F.3d at 289 (internal quotation marks omitted). The Court of Claims definitively found that Defendant's arrest was privileged because it was supported by probable cause, and that Defendant did not use excessive force against Plaintiff because pulling her out of the vehicle – assuming he did – was reasonable once she refused to do so after being asked several times. (Okereke Supp. Decl. Ex. B, at 19.) Further, as already noted, resolution of these issues was necessary in the prior proceeding because false arrest and excessive force were the only claims Plaintiff alleged.

Accordingly, Plaintiff's excessive force and false arrest claims pursuant to 42 U.S.C. § 1983 are barred by collateral estoppel, and summary judgment is granted on those claims.[12]

B.  Unlawful Search

Plaintiff further claims that Defendant conducted an unlawful search in violation of the Fourth Amendment by going "thru [sic] [her] personal property," (Doc. 2, at 3), and removing her belongings from her bag at the police station after the arrest, (see Lawtone-Bowles Dep. 74). But where "the constitutionality of a search incident to an arrest derives from the validity of the arrest itself . . . a guilty plea provides a defense to any Section 1983 claim brought for the search of an arrested person that is conducted as an incident to that arrest."  *Hope v. City of N.Y.*, No. 08-CV-5022, 2010 WL 331678, at *3 (E.D.N.Y. Jan. 22, 2010) (internal quotation marks

---

[12] Even if Plaintiff's false arrest claim were not barred by collateral estoppel, summary judgment would be appropriate.  Probable cause is a complete defense to a claim of false arrest.  *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  Moreover, in order for such a claim to fail, an officer need not have had probable cause of the offense with which the plaintiff was ultimately charged or the offense invoked by the officer; it is sufficient if there was probable cause to arrest plaintiff for any offense.  *See Tompkins v. City of N.Y.*, 50 F. Supp. 3d 426, 433 (S.D.N.Y. 2014).  Plaintiff stated at her deposition that she pleaded guilty to parking on pavement.  (*See* Lawtone-Bowles Dep. 80-81.)  Plaintiff's guilty plea therefore established probable cause for the arrest as a matter of law. *See McLaurin v. New Rochelle Police Officers*, 439 F. App'x 38, 39 (2d Cir. 2011) (summary order) (summary judgment proper with respect to § 1983 false arrest claim where conviction established probable cause for arrest as matter of law); *Chillemi v. Town of Southampton*, 934 F. Supp. 2d 365, 376 (E.D.N.Y. 2013) (conviction based on voluntary plea of guilty, even to lesser charge, establishes probable cause and precludes subsequent claim of false arrest).  Plaintiff's guilty plea further bars any claim for false arrest because her conviction prevents her from showing she experienced a "favorable termination."  *See Scretching v. Schlosser*, No. 12-CV-8129, 2014 WL 1797687, at *5 (S.D.N.Y. May 6, 2014) ("[W]here an underlying alleged false arrest or malicious prosecution has led to a conviction, including one entered following a guilty plea, and that conviction remains unchallenged, Fourth Amendment claims are barred."), *report and recommendation adopted*, 2014 WL 2624754 (S.D.N.Y. June 4, 2014); *Vializ v. Crespo*, No. 12-CV-724, 2012 WL 6597465, at *1 (D. Conn. Dec. 18, 2012) ("Proof that the criminal case terminated in a manner favorable to the plaintiff is an essential element of the false arrest claim.  The complaint alleges that plaintiff was convicted based on his plea of guilty.  That is not a favorable termination.") (citation omitted).

To the extent Plaintiff is alleging in her complaint that Defendant made verbal threats against her in violation of federal law, (*see* Doc. 2, at 3; Lawtone-Bowles Dep. 57, 71), "verbal harassment or threats alone do not constitute a violation of any federally protected right and are therefore not actionable pursuant to 42 U.S.C. § 1983." *Bowles v. N.Y.*, 37 F. Supp. 2d 608, 613 (S.D.N.Y. 1999); *see Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *15 (S.D.N.Y. Sept. 30, 2015) ("A threat of force does not constitute excessive force.") (internal quotation marks omitted); *Liner v. Ward*, 754 F. Supp. 32, 34 (S.D.N.Y. 1991) (plaintiff's allegations of "rude, inconsiderate and insulting language" by police officer while effecting arrest insufficient to give rise to constitutional violation).

omitted).  Searching a suspect's handbag, even at the station rather than the site of the arrest, is proper incident to arrest.  *See Washpon v. Parr*, 561 F. Supp. 2d 394, 404 (S.D.N.Y. 2008); *United States v. Venizelos*, 495 F. Supp. 1277, 1281 (S.D.N.Y. 1980).  As noted above, Plaintiff pleaded guilty to parking on pavement, which establishes the lawfulness of her arrest (as discussed earlier in connection with her false arrest claim) and the search of her bag incident to that arrest.  *See Hope*, 2010 WL 331678, at *3 ("Since plaintiff's claim for false arrest is dismissed on account of his guilty plea, it follows that his claim for an illegal search of his car under the Fourth Amendment must be dismissed for the same reason.").  Accordingly, Defendant's search of Plaintiff's belongings following her arrest was lawful and summary judgment is appropriate.

C.  First Amendment

Plaintiff further claims that Defendant retaliated against her for exercising her right to free speech under the First Amendment.  She asserts that she asked Defendant about his claim that she had been speeding, telling him that she had been using cruise control and that she drives for a living, (*see* Doc. 2, at 3; Lawtone-Bowles Dep. 46), after which Defendant threatened to issue her additional tickets if she did not stop speaking or did not cease questioning the basis for her arrest, (Okereke Reply Decl. Ex. B, at 2-4).[13]

In order to prove a First Amendment retaliation claim, a plaintiff must show that (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or

_____

[13] Plaintiff's complaint alleged that Defendant threatened to write more tickets if she did not stop crying and also because she questioned the basis for her arrest.  (Doc. 2, at 3.)  In her deposition she testified that he threatened to give her more tickets because she was questioning him and because she continued speaking.  (Lawtone-Bowles Dep. 36, 71.)  In a letter to the Court, she wrote that Defendant threatened her because she questioned him about the validity of her arrest.  (Doc. 37.)  She said the same in her opposition to Defendant's motion, as well as both that Defendant threatened her with more tickets if she did not stop talking and that he threatened her with more tickets if she did not let him speak.  (Doc. 45, at 2-4.)

substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury – which can be a chilling of speech or some other concrete harm. *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Plaintiff's claim fails on the second prong because her guilty plea constitutes "conclusive evidence that an arrest was supported by the requisite probable cause," *Yajure v. DiMarzo*, 130 F. Supp. 2d 568, 574 (S.D.N.Y. 2001), which "serve[s] as a complete defense to any claim of First Amendment retaliation based on that arrest," *Morgan v. Cty. of Nassau*, 720 F. Supp. 2d 229, 238 (E.D.N.Y. 2010); *see Golodner v. City of New London*, 443 F. App'x 622, 624 (2d Cir. 2011) (summary order). Where an officer has probable cause to believe an individual violated the law, and charges that individual accordingly, that officer's underlying motives in reporting the individual's actions need not be examined.[14] *See Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("As to the second element, because defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken.") (citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995)).

---

[14] Plaintiff pleaded guilty to only one charge of parking on pavement, but, as noted earlier, the plea establishes probable cause to arrest as a matter of law, regardless of what other charges were leveled. (*See* note 12 above). Further, apart from the plea, to the extent Plaintiff might have argued that Defendant was motivated to issue additional tickets or arrest her because she chose to exercise her right to free speech, such an argument would be barred by collateral estoppel. Ordinarily, viewing the facts in the light most favorable to Plaintiff, I could not rule as a matter of law that Defendant had probable cause to arrest her for reckless driving or speeding. But in this instance the Court of Claims heard both sides' testimony at trial and found that Defendant "had probable cause to detain and arrest" Plaintiff for what he believed constituted reckless driving. (Okereke Supp. Decl. Ex. B, at 19.) Accordingly, the state court's determination collaterally estops Plaintiff from relitigating at this stage whether or not those charges were supported by probable cause, *see DiMascio v. City of Albany*, No. 99-CV-7658, 2000 WL 232053, at *1 (2d Cir. Jan. 26, 2000) (collateral estoppel applied to Albany City Court's finding that arresting officers had probable cause to stop appellant's vehicle); *Tirse v. Gilbo*, No. 15-CV-987, 2016 WL 4046780, at *16 (N.D.N.Y. July 27, 2016) (giving preclusive effect to Court of Claims' prior determination that probable cause existed for Plaintiff's arrest, and collecting cases to this effect); *Yevstifeev v. Steve*, 860 F. Supp. 2d 217, 223 (W.D.N.Y. 2012) (plaintiff collaterally estopped from arguing in federal court that probable cause lacking where he had full and fair opportunity to challenge trial court's determination that officers had probable cause for arrest); *DeGennaro v. Town of Riverhead*, 836 F. Supp. 109, 111-12 (E.D.N.Y. 1993) (collateral estoppel would have applied to probable cause determination in Southampton Town Court had defendants had full and fair opportunity to contest issue, but such opportunity did not exist because neither trial nor hearings conducted and ruling made solely on pleadings), and therefore the probable cause to arrest Plaintiff for those charges nullifies any corresponding First Amendment retaliation claims.

Accordingly, Plaintiff cannot make out a retaliation claim pursuant to the First Amendment and summary judgment is granted.

### D.  Equal Protection

Plaintiff's final claim is that Defendant discriminated against her on the basis of race in violation of the Equal Protection Clause of the Fourteenth Amendment.  (*See* Doc. 2, at 3; Okereke Reply Decl. Ex. B, at 3-4.)  She argues not only that her arrest was racially motivated but also that Defendant subsequently targeted her by following up with the district attorney's office because he was unhappy Plaintiff was allowed to plead guilty to a charge of parking on pavement.  (*See* Okereke Reply Decl. Ex. B, at 3-4.)

In order to establish a claim of selective enforcement, a plaintiff must prove that "compared with others similarly situated, [she] was selectively treated[,] and . . . that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (internal quotation marks omitted).  Such a claim requires showing "more than selectivity in enforcement; it requires selective enforcement based on impermissibly discriminatory or malicious reasons."  *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 320 (D. Conn. 2015).

As a threshold matter, in order to state a viable claim, a plaintiff must show that she was "treated differently compared to others similarly situated." *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004).[15]  Plaintiff has not identified any comparators or

---

[15] The Second Circuit has not clarified "the degree of similarity that a plaintiff must show in order to adequately allege an equal protection claim under the selective enforcement theory."  *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 359 n.9 (S.D.N.Y. 2014).  Plaintiffs must, at a minimum, identify comparators that are "similarly situated in all material respects," *Sharpe v. City of N.Y.*, No. 11-CV-5494, 2013 WL 2356063, at *4 (E.D.N.Y. May 29, 2013) (internal quotation marks omitted), *aff'd*, 560 F. App'x 78 (2d Cir. 2014), but less clear is whether they must also meet the more stringent "extremely high" standard applicable to "class of one" claims, *see Witt*, 992 F. Supp. 2d at 359 n.9 (internal quotation marks omitted) (collecting cases and explaining disagreement within Second Circuit).  I

otherwise provided any basis from which to infer that she was treated differently than anyone else under similar circumstances on account of her race, *see Presnick v. Town of Orange*, 152 F. Supp. 2d 215, 225 (D. Conn. 2001) (granting summary judgment as to *pro se* plaintiff's equal protection claim where plaintiff neither pleaded similarity to comparator nor, at summary judgment stage, provided evidence of similarity); *see also Mesa v. City of N.Y.*, No. 09-CV-10464, 2013 WL 31002, at *25 (S.D.N.Y. Jan. 3, 2013) (existence of probable cause precludes selective enforcement claim because it presents reason for treating plaintiff differently from others), nor has Plaintiff otherwise proffered any evidence suggesting a triable issue concerning racial or otherwise discriminatory animus by Defendant, *see Clack v. Torre*, No. 10-CV-1905, 2014 WL 1050792, at *11 (D. Conn. Mar. 17, 2014) (granting summary judgment as to equal protection claim where *pro se* plaintiff "failed to offer any evidence based on which a jury could reasonably conclude that Defendants acted based on racial animus or other bad faith intent when they investigated and arrested Plaintiff," and "there [was] no evidence in the record that either Defendant . . . exhibited any racial animus toward Plaintiff"), *appeal dismissed* (2d. Cir. July 11, 2014).  Defendant's displeasure with the disposition offered Plaintiff by the district attorney's office in no way suggests action taken on the basis of race, nor does Plaintiff's conclusory assertion that she "believe[s] [she] was being racially profiled" without any further evidence in support.  (P's Opp. 3.)

Accordingly, summary judgment as to Plaintiff's equal protection claim is granted.

---

need not decide whether the similarity analysis should be conducted under the same standard for both theories, because I find Plaintiff has not met the less stringent "similarly situated in all material respects" test.

**VI.**   <u>**Conclusion**</u>

For the reasons stated above, Defendant's motion for summary judgment is GRANTED

as to all claims.  The Clerk of Court is respectfully directed to terminate the pending motion,

(Doc. 48), and close the case.

**SO ORDERED.**

Dated: November 17, 2016
       White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.

20